# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| WHEELING & LAKE ERIE RAILWAY COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil No. 1:14-cv-325-NT ) |
| MAINE NORTHERN RAILWAY COMPANY AND NEW BRUNSWICK SOUTHERN RAILWAY CO., | ) ) ) ) ) |
| Defendants. | ) |

## ORDER ON CROSS-MOTIONS
## FOR PARTIAL SUMMARY JUDGMENT

The Plaintiff Wheeling & Lake Erie Railway Company ("**Plaintiff**" or "**Wheeling**") seeks to collect money from Maine Northern Railway Company and New Brunswick Southern Railway Company Limited (together, the "**Defendants**") pursuant to a security agreement with Montreal, Maine & Atlantic Railway, Ltd., and its affiliates ("**MMA U.S.**"). The Defendants owed money to MMA U.S., and these accounts receivable were assigned to the Plaintiff as part of a security agreement between the Plaintiff and MMA U.S. The Defendants claim, among other defenses, that they have valid rights of recoupment or set-off that exceed the amounts sought by the Plaintiff. Most relevant to this Order, the Defendants argue that the Plaintiff's claims are barred by the 11 M.R.S. § 9-1404(1)(b) (2014) because the Defendants' rights of set-off and/or recoupment accrued prior to the time they received

authenticated notification from either the Plaintiff or MMA US of Plaintiff's purported security interest in MMA US's accounts receivable. Defs.' Joint Answer ¶ 25 (ECF No. 7).

At issue in these cross-motions for partial summary judgment is whether the Defendants received the required notice cutting off subsequent claims and defenses when they obtained credit reports from Dun & Bradstreet ("**D&B**") indicating the existence of the Plaintiff's security interest. For the following reasons, I **GRANT** the Defendants' motion for partial summary judgment. Because the credit reports did not constitute the required notice under 11 M.R.S. § 9-1404, the Plaintiff's rights as a secured creditor are subject to all claims and defenses of the Defendants that had accrued at the time MMA U.S. filed its petition for bankruptcy relief in 2013.

## FACTS AND PROCEDURAL HISTORY

The parties have submitted their motions on a stipulated record,[1] which includes the following pertinent facts. In 2009, MMA U.S. and certain affiliates received a line of credit from Wheeling and executed a security agreement assigning an interest in MMA U.S.'s accounts receivable to Wheeling. Wheeling subsequently perfected this security interest by filing a financing statement with the Delaware Secretary of State. On August 7, 2013, MMA U.S. filed a petition for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of Maine, initiating a bankruptcy case that is currently pending and invoking the bankruptcy

---

[1] *See* Stipulation of Facts (ECF No. 19). I also consider the uncontested facts contained in Plaintiff's Statement of Fact (ECF No. 22) and Defendants' Response to Statement of Fact (ECF No. 26).

code's "automatic stay" provisions.[2]  MMA U.S. filed a motion with its petition that referred to Wheeling's security interest in MMA U.S.'s accounts receivable.  Debtor's Motion for Order Pursuant to 11 U.S.C. §§ 361, 362, and 363: (I) Authorizing Debtor to Use of Cash Collateral on Interim Basis; and (II) Scheduling a Hearing to Consider the Use of Cash Collateral on a Final Basis or ("**August 7, 2013 motion**"), Case No. 13-10670, (Bankr. Me.) (ECF No. 5).  The Defendants received the August 7, 2013 motion the day after they entered appearances in the bankruptcy case and filed proofs of claims for debt owed by MMA U.S. to the Defendants.[3] *See* Stipulation of Facts ¶ 13. In a letter dated September 10, 2013, Plaintiff's counsel also informed the Defendants' counsel of Wheeling's security interest.

Prior to their receipt of MMA U.S.'s August 7, 2017 motion and the September 10, 2013 letter from Plaintiff's counsel, on April 16, 2010 and August 30, 2012, the Defendants obtained credit reports directly from D&B identifying Wheeling's security interest in the "[i]nventory and proceeds – [a]ccount(s) and proceeds" of MMA U.S. See Stipulation of Facts, Exs. M and N. The parties agree that any set-off claim by Defendants accrued after the Defendants obtained the first D&B report on April 16, 2010.

---

[2]     MMA U.S.'s bankruptcy was precipitated by the tragic train derailment in Lac-Mégantic, Québec.  *See* Pl.'s Compl. ¶¶ 9-10 (ECF No. 1). "On July 6, 2013 there was a derailment of an unmanned eastbound train of the MMA US and/or one of its affiliates with 72 carloads of crude oil and 5 locomotives … The [d]erailment caused explosions and is presumed to have killed 47 people and precipitated lawsuits related to injuries, deaths, and property damage in the United States and Canada." Pl.'s Compl. ¶ 9.

[3]     Subsequently, the bankruptcy court modified the automatic stay to allow Wheeling to enforce its rights in regards to the accounts receivable, and to allow the Defendants to exercise their rights of set-off.

The parties dispute the amounts that are owed by the Defendants to MMA U.S. (thus to Wheeling) and what rights of set-off or recoupment the Defendants have based on amounts owed to them by MMA U.S. The Plaintiff filed suit in this court on August 14, 2014. The parties have filed cross-motions for partial summary judgment on the limited question of whether the D&B credit reports provided the required notice under Maine law that would cut off the Defendants' subsequent claims and defenses against Wheeling.

## STANDARD OF REVIEW

Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When parties file cross-motions for summary judgment, my role is to "determine whether either of the parties deserves judgment as a matter of law on [the] facts that are not disputed." *Showtime Entm't, LLC v. Town of Mendon,* 769 F.3d 61, 69 (1st Cir. 2014) (alteration in original) (citation omitted).

## ANALYSIS

The purely legal question presented by the cross-motions for summary judgment turns on the interpretation of one provision of Maine's version of the Uniform Commercial Code ("UCC") dealing with the rights of account debtors as against assignees. 11 M.R.S. § 9-1404(1)(b).[4] At issue is whether, under the statute, the receipt of a D&B report constitutes sufficient notice to foreclose the rights of the account debtors as against the assignor.

---

[4]  The parties do not dispute that Maine law governs this diversity suit.

### I.     Principles of Statutory Construction

"The language of an unambiguous statute typically determines its meaning." *United States v. Hilario*, 218 F.3d 19, 23 (1st Cir. 2000); *see also In re Fahey*, 779 F.3d 1, 9 (1st Cir. 2015) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'") (alteration in original) (citation omitted); *Carrier v. Sec'y of State*, 60 A.3d 1241, 1245 (explaining that "[w]hen a statute is unambiguous, we interpret the statute directly" without recourse to rules of statutory construction, legislative history, or other "extraneous aids.") (citation omitted); *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992) ("We have stated again and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citations omitted).  "A statute is ambiguous if it is reasonably susceptible to different interpretations." *Estate of Joyce v. Commercial Welding Co.*, 55 A.3d 411, 415 (Me. 2012).

In determining whether the language of a statute is plain, I am guided by fundamental principles of statutory construction, including: (1) that the statute's words must be read "in their context and with a view to their place in the overall statutory scheme," *King v. Burwell*, 135 S. Ct. 2480, 2489  (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)); and (2) that my interpretation must "give effect, if possible, to every clause and word of [the] statute."

*See id.* at 2498 (Scalia, J., dissenting) (quoting an "elementary principle" from *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)); *United States v. Gouse,* No. 14-1499, 2015 WL 4979268, *3 (1st Cir. August 21, 2015) (discussing duty of courts "to try to give every word or phrase of a law meaning").

## II. Context of Section 9-1404.

Section 9-1404(1)(b) provides:

> Unless an account debtor has made an enforceable agreement not to assert defenses or claims . . . the rights of an assignee are subject to . . . Any other defense or claim of the account debtor against the assignor that accrues *before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.*

11 M.R.S. § 9-1404(1)(b) (emphasis added). Sections 9-1404 and 9-1406 replaced the now-repealed § 9-318 as of July 1, 2001. *See* L.D. 2245, Ch. 699 (119th Legis. 2000). Section 9-318 provided that "[u]nless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section 9-206, the rights of an assignee are subject to . . . [a]ny other defense or claim of the account debtor against the assignor which accrues before the account debtor *receives notification of the assignment.*" 11 M.R.S. § 9-318(1) (repealed 2001). The actual notice requirement of section 9-318 was designed "to protect the rights of an account debtor vis-a-vis an assignee of the original creditor, the assignor." *Matter of Chase Manhattan Bank (N.A.) v. State of New York*, 367 N.Y.S.2d 580, 583 (N.Y. App. Div. 3d Dep't 1975). The justification for different treatment of defenses and claims accruing before rather than after notification was "simply that before notification, the account debtor expects to be dealing solely with the assignor, and justifiably assumes that he or she can settle all with the assignor." 4 J. White and R. Summers, *Uniform*

6

*Commercial Code*, § 34-6(b) at 429 (6th ed. 2010). *See In re Calore Express Co., Inc.*, 288 F.3d 22, 48 (1st Cir. 2002) ("The purpose of the rule requiring notice to foreclose an account debtor's set[-]off rights for claims independent of the contract out of which the account arises is presumably to permit the account debtor to protect its rights. Knowing that it will no longer be able to rely on the assigned accounts in disputes with the assignor, the account debtor may act differently in dealings with the assignor, or even cease doing business with the assignor entirely.").

There is no indication that section 9-1404 changed section 9-318's focus on the protection of account debtor's rights as against an assignee. The provision's purpose is still to ensure that the debtor knows when he has to deal with a new party in paying the debt, asserting set-off rights, or negotiating new terms. *See In re U.S. Aeroteam, Inc.*, 327 B.R. 852, 870-71 (Bankr. S.D. Ohio 2005) ("This section applies when a contracting party provides a security interest in some or all of its contractual rights to a third party, referred to as the 'assignee,' without the knowledge or consent of the other contracting party, referred to as the 'account debtor.'")(discussing UCC provision identical to Maine provision).

But section 9-1404 did add the requirement that notification of the assignment be "authenticated by the assignor or the assignee." 11 M.R.S. § 1404(1)(b). Under Maine's UCC, "authenticate" means "(a) to sign [or] (b) [w]ith present intent to adopt or accept a record, to attach to or logically associate with the record an electronic sound, symbol or process." 11 M.R.S. § 9-1102(7). Essentially, the term replaces and updates "sign" to allow for new methods of "signing" electronic documents and non-written media. *See* § 9-1102, cmt. 9(b); J. White and R. Summers, § 31-3 at 135.

7

### III. The Sufficiency of the Notice

The Plaintiff's contention that the Defendants' receipt of the D&B reports in 2010 & 2012 was legally sufficient notice is impossible to square with the plain language of sections 9-1404 and 9-1102(7). The plain language of those statutes requires that the notice be authenticated (that is, either signed the old-fashioned way or by its technological equivalent) *by the assignor or assignee*. There is nothing on the D&B reports that can be viewed as a signature or its electronic equivalent affixed by either MMA U.S. or Wheeling. MMA U.S. and Wheeling did not prepare, adopt or sign-off on the reports issued by D&B.[5]

The Plaintiff's attempts to inject ambiguity in section 9-1404 are not persuasive. First, Wheeling argues that the clause "authenticated by the assignor or the assignee" modifies the word "assignment" rather than the word "notification," based on the "rule of the last antecedent." Pl.'s Mot. for Partial Summ. J. at 15 (ECF No. 21). The rule of the last antecedent provides that "a limiting clause or phrase … should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). But the "rule of the last antecedent" is most appropriate where a disputed provision involves limiting clauses or phrases that follow a series of words or phrases separated by commas. *See United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir. 1985) (using the rule of the last

---

[5] In fact the reports contain caveats in the "Public Filings" sections: "The following Public Filing data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source." D&B Reports for August 30, 2012 and April 16, 2010 (ECF Nos. 19-12 and 19-13).

antecedent to determine that "[t]he modifying phrase cannot be rationally construed to refer distributively to the more remote antecedent words or phrases, *which occur before the disjunctive clause set off by commas*.") (emphasis added). Here, there is no series of items or disjunctive phrases. The context indicates that "notification of the assignment" is one indivisible phrase, and it would thus be a mistake to apply the rule of the last antecedent to modify one portion of this indivisible phrase. Further, a requirement that an *assignment* be authenticated by the assignor or assignee makes little sense in the context of section 9-1404, which, as discussed above, is focused on protecting account debtors. *See Barnhart*, 540 U.S. at 26 (noting that the rule of the last antecedent "is not an absolute and can assuredly be overcome by other indicia of meaning.")

The Plaintiff also argues that the Maine Legislature uses different language when it intends to require authenticated notice. The Plaintiff gives several examples, one of which is neighboring section 9-1406, which requires "notification, authenticated by the assignor or the assignee." 11 M.R.S. § 9-1406. In contrast to the authenticated notice requirement of section 9-1406, the Plaintiff contends that section 9-1404's "notification of the assignment authenticated by the assignor or assignee" requires only an actual notice standard. I disagree. The slightly different structure between the sections does not justify application of completely different notice requirements in provisions which were both designed to protect the rights of account debtors as against assignees.

The Plaintiff also points to the comments to section 9-1406 discussing the authenticated notice requirement.[6] There are no parallel comments to section 9-1404. But the absence of comment on the authentication requirement does not change the fact that section 9-1404 is unambiguous. While the comments are useful aids to interpretation, they do not have the force of law, *see JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 57 n. 6 (1st Cir. 1999), and I will not apply principles normally reserved for interpretation of ambiguous statutory language.

The Plaintiff next points to *In re Communication Dynamics, Inc.*, 300 B.R. 220 (Bankr. D. Del. 2003), in which a Delaware bankruptcy court interpreted the same provision of the Tennessee UCC. The bankruptcy court recognized that "the addition of the authentication requirement … must mean that something more than actual or constructive notice is required," but it ultimately concluded that "actual delivery of a signed copy of the financing statement or some other formal notice" is not necessary. 300 B.R. at 225. In my view, the Delaware court failed to account for the phrase "by the assignor or the assignee" in its focus on the meaning of "authenticated." *See In re Commc'n Dynamics*, 300 B.R. at 225. The Delaware court was concerned that "[i]t makes no commercial sense to require a particular form of notification transmitted directly from a debtor or a secured party to all account debtors." *Id*. The Plaintiff also argues that authenticated notice makes no commercial sense, but, in my view, requiring an assignor or assignee to provide authenticated notice to ensure that an

---

[6] The Uniform Commercial Code Comment to section 9-1406 states: "An effective notification under subsection (a) [Maine cite subsection (1)] must be authenticated. This requirement normally could be satisfied by sending notification on the notifying person's letterhead or on a form on which the notifying person's name appears. In each case the printed name would be a symbol adopted by the notifying person for the purpose of identifying the person and adopting the notification." See Section 9-102 [Maine cite section 9-1102] (defining 'authenticate')." 11 M.R.S. § 9-1406, cmt. 2.

account debtor can act to protect its rights is not the type of absurd result that would justify ignoring clear statutory language. *See In re Rudler*, 576 F.3d 37, 44-45 (1st Cir. 2009) (courts should not apply plain meaning of statutory language if it would lead to "absurd" results).

Finally, the Plaintiff argues that even if the notification must be "authenticated," the presence of the Delaware Secretary of State's electronic filing numbers "authenticated" the D&B reports within the meaning of the UCC. However, even within the broad meaning of "authenticated," neither MMA U.S. nor Wheeling authenticated the D&B reports—these documents do not bear their signatures, signs, or symbols. I have a duty to give meaning to every phrase of a statute and the Plaintiff's interpretation renders the phrase "by the assignor or the assignee" meaningless.

Because the plain meaning of the statute supports the Defendants' position, I **GRANT** the Defendants' motion for partial summary judgment and **DENY** the Plaintiff's motion.

**SO ORDERED.**

/s/ Nancy Torresen
United States Chief District Judge

Dated this 15th day of September, 2015.